EMPIRE GAS & FUEL CO. v. RAILROAD COMMISSION OF TEXAS et al.

No. 8469.

Court of Civil Appeals of Texas. Austin.

May 13, 1936.

Rehearing Denied June 3, 1936.

Jas. W. Finley and Hayes McCoy, both of Bartlesville, Okl., Harry O. Cowing, Jr., of Longview, and Clayton L. Orn, and Phillips, Trammell, Chizum, Estes & Edwards, all of Fort Worth, for appellant Empire Gas & Fuel Co.

Joe S. Brown, of Houston, and Carl R. McLynn, of Beaumont, for appellant Gulf Production Co.

Wynne & Wynne and W. A. Wade, all of Longview, for appellees Shilo Oil Co., A. L. Brin, and K. W. Griffin.

William McCraw, Atty. Gen., and Harry S. Pollard, Asst. Atty. Gen., for Railroad Commission of Texas.

BAUGH, Justice.

This is a rule 37 case. The Railroad Commission granted to the Shilo Oil Company, on July 9, 1935, as an exception to said rule, a permit to drill a second well on 2.75 acres of land in Gregg county. The spacing provisions then applicable in said area were 660 feet between wells and 330 feet from property lines. The applicant already had one well in the center of said tract. The examiner for the Railroad Commission recommended, after hearing, that the permit be not granted. Adjacent leaseholders protested the granting of the permit. Appellant, an adjacent leaseholder, brought this suit to set aside such order of the commission, on the ground that it would increase the waste already occurring in that area because of density of drilling, etc., as being unreasonable, arbitrary, and capricious. At the close of appellant's evidence, the trial court rendered judgment against it; hence this appeal.

The following facts appear: The Empire Gas & Fuel Company held a lease in said field on 40 acres of land, square in dimensions. In a suit brought by E. M. Myers against numerous parties, in which others intervened, the exact nature and grounds of which do not appear in the record, there was entered an agreed judgment on March 29, 1934, vesting in A. A. Lockhart and others, who apparently as owners executed the original lease on said lands, all surface rights, and setting aside to four other parties a leasehold estate in 6¾ acres of said tract. Just when and how these parties acquired such leasehold interest is not shown. This 6¾ acres was carved out of the 40-acre tract adjacent to its west boundary, the north line of such 6¾ acres being 170 feet south of the north line of the 40-acre tract; and the south line of said 6¾ acres being 430 feet north of the south boundary line of said 40-acre tract. This 6¾-acre tract was 393 feet wide east to west and 748 feet long north to south. Said agreed judgment also subdivided the leasehold estate in said 6¾ acres as follows: To E. M. Myers was set aside a leasehold estate in 2 acres out of the south end of said 6¾-acre tract, 221.7 feet wide north to south by 393 long, east to west; to K. W. Griffin 2¾ acres immediately north of and adjacent to the Myers tract, 304.7 feet wide by 393 feet long; to F. E. Lumpkin, a 1-acre tract immediately north of and adjacent to the Griffin tract, 110.8 feet wide and 393 feet long; and to Maurice Prothro, a minor, the remainder of said 6¾-acre tract, being a 1-acre tract immediately north of and adjacent to the Lumpkin tract and having the same dimensions. Permits were granted as exceptions to rule 37 for one well in the center of each of these four small tracts without protest from the adjacent lease owners. Thereupon the owners of leases surrounding these small tracts were granted, without protest from the leaseholders of the small tracts, equidistant offset wells surrounding the 6¾ acres. Up to the time the permit here involved was applied for, the Railroad Commission had apparently granted the numerous permits applied for in this vicinity on the ground that same were necessary to protect vested rights and because no protests were filed. A density of drilling in this immediate area was thereby accomplished at much less spacing distance between wells than permitted under rule 37, and greatly out of proportion to the surrounding area generally. We do not understand appellee Shilo Oil Company to deny that the situation thus presented causes waste; nor that the drilling and operation of well No. 2 on the 2¾-acre tract, 55 feet from its north boundary line, and 110 feet from the well on the adjoining 1-acre tract, will increase such waste. The only ground on which such permit can be sustained, therefore, is that it was necessary to protect vested rights or to prevent confiscation through drainage.

On this issue the Shilo Oil Company's rights are referable to two questions: (1) The efficacy of the agreed judgment of partition subdividing the 6¾-acre tract into small tracts; and (2) if such judgment be conclusive on that issue, whether the one well drilled in the center of the 2¾-acre tract will enable the owner a fair opportunity to recover his fair share of the oil in place beneath it. It is not controverted that the partition judgment was entered by agreement. The judgment itself so shows. It is now settled that such a judgment will be construed as a contract and the rights of the parties thereunder governed by the rules applicable to contracts in general. Tyner v. City of Port Arthur, 115 Tex. 310, 280 S.W. 523; Frazier v. Hanlon Gasoline Co. (Tex.Civ.App.) 29 S.W.(2d) 461, 470 (writ ref.); 25 Tex.Jur. 387. It follows, therefore, that Griffin, through whom Shilo Oil Company deraigns its rights, acquired no greater rights under the agreed judgment entered on March 29, 1934, than if such partition had been effected by con-

tract. And, if Griffin acquired his interest in the larger tract of land, obviously capable of development as a whole under the spacing provisions of rule 37, subsequent to the promulgation and effective date of such rule in this field, he could not, under the now settled line of decisions, create a condition by subdivision of said lands into small tracts which would necessitate an exception to such rule 37, and acquire a vested right to such exception. Sun Oil Co. v. Railroad Commission (Tex.Civ. App.) 68 S.W.(2d) 609; Brown v. Humble Oil & Ref. Co. (Tex.Sup.) 83 S.W.(2d) 935, 99 A.L.R. 1107. In any event, Griffin agreed to the judgment, and, if it be given more efficacy than a contract would import, he thereby voluntarily became a party to the creation of a condition which, if appellees' contention be sustained, would by the drilling of a second well on said tract necessarily cause waste in violation of the conservation laws. Since the record does not disclose when, how, nor through what channels Griffin acquired his interest in said land, we cannot determine the Shilo Oil Company's rights here.

The surrounding area to the well in controversy had already been densely drilled and the thickness of the oil-bearing sand ascertained. This well was within 660 feet of 15 other wells already drilled. Witnesses for appellant, whose qualifications as experts are not questioned, testified as to the amount of oil in place beneath this 2¾-acre tract, and that the one well already drilled in the center of said tract would give the Shilo Oil Company a fair opportunity to recover its fair share of the oil in place beneath said tract, under existing proration rules. While there was greater density of wells to the north of said tract, where the owners were procuring more than their fair share of the oil in place underneath same, the drainage on that side of said tract was, according to such testimony, being compensated by drainage to said tract from other directions. If that be true, then the Shilo is not injured nor are its rights being confiscated. Edgar v. Stanolind Oil & Gas Co. (Tex.Civ.App.) 90 S.W.(2d) 656 (writ ref.); Brown v. Humble Oil & Ref. Co., supra; Sun Oil Co. v. Gillespie (Tex.Civ.App.) 85 S.W. (2d) 652; Atlantic Oil Production Co. v. Railroad Commission (Tex.Civ.App.) 85 S. W.(2d) 655. The mere fact that an adjoining leaseholder to the appellee Shilo Oil Company has been given an opportunity to procure more than his fair share of the oil in place beneath his land affords no reason for giving the Shilo an opportunity to cause waste by doing the same thing, if, as the evidence of appellant showed, he already has all the opportunity he is entitled to under the law.

We also sustain appellant's contention that the calculations, well density, and production per acre taken from larger leases in the vicinity of this tract offered in evidence by appellant, most of which were excluded by the trial court, were admissible. These were admissible in view of the facts shown as to porosity of sands underlying same, the existing common pool in the entire area, and the tendency to equalize pressure over large areas, both on the question of increasing waste by such additional well, and particularly on the issue as to whether the one well on said tract, in its relation to the surrounding area generally, was affording the Shilo a fair opportunity to recover its fair share of the oil in place beneath its tract.

It was not error, however, to exclude the proffered testimony of appellant as to the agreement made between the various parties to said judgment relative to various other wells, the drilling of offsets, and that each owner of said small tracts should be entitled to drill only one well thereon. If such agreements contravened the conservation laws and the spacing provisions of rule 37, and an exception thereto is not warranted under the facts presented, agreements between the parties cannot affect their proper enforcement. This question was expressly decided in Edgar v. Stanolind Oil & Gas Company, supra.

Appellant offered in evidence the recommendation of the deputy supervisor of the commission, who heard the evidence on appellee's application for its permit, and also a transcript of the testimony heard by him, duly authenticated by the reporter for the commission, under its allegation that the commission acted without evidence in granting such permit. This evidence was excluded. In this we think the trial court erred.

The recommendation by the deputy supervisor to the commission is not binding on the commission, nor does it constitute an official act of the commission until approved

and made a part of the commission's order. Then it is not the act of the deputy, but that of the commission. The order issued by the commission is the subject matter of the suit, not the recommendation of the deputy. But, where the order of the commission is attacked as being arbitrary, unreasonable, and without factual basis in the evidence, we see no reason why the entire proceeding before the agency of the commission who ascertained the facts on which the commission undertook to act should not be admitted in order that the trial court might be fully informed of all the proceedings on which the commission did in fact enter its order.

While the transcript of the evidence before the commission would not in and of itself be competent as proof on the issues presented to the trial court, the proceeding there being a trial de novo, determinable by competent proof under the rules of evidence, where, as here, it was alleged that the commission acted without evidence, consideration of the record of the hearing before the commission would, it seems to us, be the most practical way of determining that question.

Nor did appellant abandon its cause of action by announcing in open court that it abandoned its prayer for injunctive relief against the drilling of said well No. 2 on said 2¾-acre tract and the production of oil from same. The issue of the validity of the commission's order granting the permit still remained. The injunctive relief sought was but ancillary to, and dependent upon, the determination of that issue.

The Gulf Production Company which owned a lease south of and adjacent to the 40-acre tract out of which the 6¾-acre tract was carved and then subdivided intervened in this suit, but was, upon motion of appellees, dismissed on the ground that it was not a necessary nor proper party to the suit. By separate assignments and brief it complains of this action of the trial court.

The statute (article 6049c, Vernon's Ann.Civ.St.) does not define who are "interested parties affected" by orders granting exceptions to rule 37, but does authorize such interested parties so affected to attack such orders by suit. Obviously such a definition, if attempted by the Legislature, would not be practicable. Whether such exception "affects" the interest or property rights of a leaseholder who attacks it is generally a fact question dependent upon the facts and circumstances of the particular case, and no hard and fast rule could well be laid down. We do not think the statute contemplated the inclusion within its terms of those only remotely interested and affected by such order; but does include those whose lands and property rights are materially and substantially affected by such exception, though their lands may not immediately adjoin the tract involved. Undoubtedly the well in question did substantially affect the 6¾ acres, the south boundary line of which was 430 feet (less than the 660 spacing distance for wells in this area) from the Gulf Production Company's lease. And the density of the drilling in the immediate area of this 6¾-acre tract was clearly of such consequence as to affect the Gulf's lease to the south thereof and adjacent to the 40-acre lease of the appellant out of which it was carved. The Gulf offered testimony of R. D. Parker, which was excluded, that if said well were drilled and offsets permitted, a further density of drilling would result in this area which would not only cause waste, but would materially drain oil from the Gulf's lease. Under all the facts and circumstances, therefore, we conclude that the Gulf showed such an interest in the suit as to make it a proper, if not a necessary, party, entitling it to intervene to protect its interests; and that the trial court erred in dismissing it from the suit.

For the reasons stated, the judgment of the trial court will be reversed and the cause remanded for another trial.

Reversed and remanded.