### RICHEY et al. v. SHELL PETROLEUM CORPORATION et al.

#### No. 8821.

Court of Civil Appeals of Texas. Austin.

April 26, 1939.

Rehearings Denied May 24, 1939.

Williams & Williams, of Austin, for appellant Ida Richey.

Wm. McCraw, Atty. Gen., and Chas. D. Rutta and Julian C. Clopton, Jr., Asst. Attys. Gen., for appellant Railroad Commission.

R. E. Seagler and H. E. Bell, both of Houston, Powell, Wirtz, Rauhut & Gideon, of Austin, E. A. Groff and R. H. Whilden, both of Houston, and Greenwood, Moody & Robertson, of Austin, for Humble Oil & Refining Co. and Shell Petroleum Corporation.

Gerald C. Mann, Atty. Gen. (succeeding Wm. McCraw), and Edgar Cale, Asst. Atty. Gen., for Railroad Commission.

M. C. Robinson, of Austin, for appellee Louise Carr.

Felts, Wheeler & Wheeler, of Austin, for appellee John E. Taylor.

BAUGH, Justice.

Appeal is from a judgment of the trial court, wherein three Rule 37 cases were consolidated and tried as one. Three separate. permits to drill three wells in the East Texas field are involved. One of the permits was attacked by the Humble Oil & Refining Co., as plaintiff, in which the Shell Petroleum Corporation intervened, and the other two by the Shell as plaintiff. Each permit was granted to a distinct and separate party. The Railroad Commission is the only defendant common to all suits. Two of the permits were sustained by the trial court and one was set aside. Consequently, the Shell, the Humble, and the Railroad Commission appear herein as both appellant and appellee; one of the permit holders as appellant; and the other two as appellees. Because of the adversity of interest not only between the original plaintiffs and the defendants; but in some respects as between the respective defendants themselves, considerable confusion has resulted in the trial itself, as well as on the appeal from the trial court's judgment. The cases were consolidated on motion of the plaintiffs, over the objection of the several defendants. The case was tried to a jury, but at the close of the evidence the trial court instructed a verdict and rendered judgment accordingly; hence this appeal.

The first tract of land here involved, rectangular in shape, consists of 20 acres, being approximately 1,130 feet long, north and south, approximately 771 feet wide, east and west, and will hereinafter be designated as the 20-acre tract. The second tract begins at the S. W. corner of the 20-acre tract, is 42 feet wide, runs eastward adjoining the 20-acre tract approximately 256 feet, contains .25 of an acre, and will be hereinafter designated as the

.25-acre tract. The third tract, consisting of .67 of an acre, joins the south line of the .25-acre tract, is approximately rectangular in shape, being 150 feet wide, north and south, with a mean length, east and west, of 256 feet, and will be hereinafter designated as the .67 acre tract. These three tracts and their relative positions are shown on the accompanying map. The locations of the wells involved are shown by the small circles on said tracts. The dots show producing wells on the surrounding tracts.

The permits involved were granted as follows: on June 29, 1937, the Railroad Commission granted to John E. Taylor a permit to drill a well in the center of the .25-acre tract. On October 1, 1937, the Commission granted to Louise Carr a permit for an additional well in the S. W. corner of the 20-acre tract to be located 133 feet north of the south line, and 135 feet east of the west line of the 20-acre tract. On the same day, October 1, 1937, the Commission granted to Mrs. Ida Richey a permit for a well near the center of the

.67 acre tract. All of these permits were granted on the recited grounds "to prevent confiscation of property." The trial court sustained the Taylor and Carr permits; but set aside as invalid the Ida Richey permit on the .67 acre tract.

In 1894, G. W. Richey acquired as community property a 40-acre tract of land, of which said 20-acre tract is the west one-half, as community property of himself and wife, Paralee Richey. In 1898, Paralee Richey died intestate. In 1899, G. W. Richey married Ida Richey. No partition was had between G. W. Richey and his children by his first wife, and on April 2, 1931, G. W. Richey, joined by his second wife, and all the children of his first wife, executed an oil and gas lease to McCurdy & Carr on the 20-acre tract.

In 1912, G. W. Richey purchased from W. H. York, the .67-acre tract as the community property of himself and his second wife, Ida Richey. On April 13, 1931, G. W. and Ida Richey, executed an oil and gas lease on this .67-acre tract to the same parties to whom the 20-acre tract had been leased.

Manifestly, in 1931, the Richeys thought that the 20-acre tract and the .67-acre tract were contiguous, but a survey of these two tracts by their respective field notes showed the .25-acre tract to exist between them. This fact was not discovered, apparently, until 1935, and on March 14, 1935, G. W. Richey and wife, Ida Richey, leased this .25-acre tract to Armstrong. He assigned his lease thereon to Taylor, who obtained one of the permits here involved to drill a well on this tract. Title to this tract was acquired by limitation, beginning in 1912, as the community property of G. W. and Ida Richey, such title clearly having so vested long prior to the execution of the April, 1931, leases on the 20-acre and .67-acre tracts.

On June 15, 1931, the lessors of the 20-acre tract and of the .67-acre tract entered into what is by the parties, termed a "pooling agreement" with the lessees of the two tracts, wherein they stipulated that "it is the desire and intention of the lessors and the lessees in the above described oil and gas mining leases to incorporate both tracts of land described in said leases into one and the same lease"; and that the royalties be paid "in the proportion that each of us owns to the total lands covered by said lease, etc."

The combined acreage was developed and royalty payments made to the respective lessors of the combined tracts. In 1934, Ida Richey and G. W. Richey sued the lessees of the two tracts in the District Court of Gregg County, Texas, to set aside the so-called "pooling agreement" of June 15, 1931, wherein they alleged that the .67-acre tract (therein designated as a one-acre tract) was the community property of G. W. and Ida Richey. Attached to said pleadings was an agreement dated December 20, 1933, alleged to have been executed by the Richeys as a substitute for the June 15, 1931, "pooling agreement," wherein this tract was then recognized by G. W. and Ida Richey as their community property. Judgment was rendered in that case in February, 1935, cancelling both the "pooling agreement" and the April 13, 1931, oil and gas lease on the .67-acre tract. On appeal to the Court of Civil Appeals of Texarkana, this judgment was reversed. In its opinion, the Court of Civil Appeals treated this .67-acre tract as being the community property of G. W. and Ida Richey on April 13, 1931, but recited that it had subsequently become separate property of Ida Richey. Upon the second trial of this case, in which the children of G. W. Richey by his first wife intervened, the defendants, lessees of the 20-acre tract and the .67-acre tracts, defaulted, judgment was again rendered cancelling the "pooling agreement" and the original lease on the .67-acre tract. In this judgment rendered on June 1, 1937, the trial court found that this .67-acre tract had been the separate property of Ida Richey since 1912. The record here shows, however, that in the first trial of the Gregg County suit in February, 1935, counsel for the Richeys agreed, and Mrs. Ida Richey then testified, that the .67-acre tract was the community property of herself and G. W. Richey in April, 1931, when the original lease thereon was executed. The record deed upon which Ida Richey apparently relied in her application to the Railroad Commission for a permit for a well on the .67-acre tract as a separate tract, executed to her by her husband, G. W. Richey, was dated May 7, 1934, and recited that it was in lieu of a deed from him to her to the same property, executed in December, 1933, which had been lost. The judgment of the District Court of Gregg County found that she had title thereto under a deed from G. W. Richey to Ida Richey, executed in 1931, in lieu of one executed in 1912, which had been lost. If another deed from G. W. to Ida Richey was executed in 1933, it must have been in lieu of the deed of 1931, which does not appear to have been in anywise accounted for.

The record also discloses that the lessees of the 20-acre tract partitioned that leasehold between them in April, 1935, wherein the McCurdys received approximately 14 acres, with four wells thereon, in the north portion of the 20-acre tract; and Louise Carr approximately 6 acres in the shape of an L, shown on said map, out of the south end of the 20-acre tract, with one well thereon. This was clearly such a subdivision of the larger tract after Rule 37 had applied thereto that it is not entitled to be treated as a separate tract for development purposes, and the questions herein presented will be considered with reference to the 20-acre tract only, as if no subdivision thereof had been made.

The foregoing facts present the general situation existing and presented to the Railroad Commission when the several applications were made. The contention made before the Commission, and the bases on which the permits were obviously granted, were: that the fee ownership of the 20-acre tract when it was leased in 1931 was jointly in G. W. Richey and his children by his first wife; that the title to the .25-acre tract was, when it was leased in 1935, in the community estate of G. W. Richey and Ida Richey by limitation; and that the title to the .67-acre tract, both when it was leased in 1931, and when application for a well thereon was made to the Commission, was in Ida Richey as her separate property.

Without summarizing or discussing the testimony here, it seems clear that when G. W. Richey purchased the .67-acre tract from York in 1912, both the grantor and the grantee intended that the conveyance of the .67-acre tract, though specifically described by metes and bounds, should include all of the land lying between York's lands on the south and the 20-acre tract on the north. It is conceded that the .25-acre strip of land lies outside of the boundaries of the 20-acre tract. In the original lease of the .67-acre tract by G. W. and Ida Richey on April 13, 1931, in the so-called "pooling agreement" of June 15, 1931, and as late as December, 1933, it was so treated and dealt with not only as their community property, but as including all of the land between the York lands on the south and the 20-acre tract on the north.

The result of the "pooling agreement" was to consolidate the original two leases into one, just as if all of the various owners of the combined tracts had originally joined in one lease thereof. McCurdy & Carr had developed this combined acreage on this theory up to 1934, having drilled five wells thereon (all located on the 20-acre tract) and had paid the respective fee owners royalties from all of said wells in the proportion that the acreage of the various owners bore to the combined acreage, as provided for in the "pooling agreement."

While the February 1, 1937, judgment of the District Court of Gregg County cancelled the "pooling agreement" and the original lease on the .67-acre tract, it was, according to the testimony of G. W. Richey, nothing more nor less than a consent judgment, whereby the .25-acre tract and the .67-acre tract were segregated from the 20-acre tract for the manifest purpose of securing from the Railroad Commission permits for additional wells, as exceptions to Rule 37, which, without such segregation they would not have been entitled to. As such, therefore, that judgment had no more efficacy than a voluntary agreement between the parties would have had. Empire Gas & Fuel Co. v. Railroad Com'n., Tex.Civ. App., 94 S.W.2d 1240, writ refused; Turnbow v. Barnsdall Oil Co., Tex.Civ.App., 99 S.W.2d 1096, writ refused; Atlantic Refining Co. v. Buckley, Tex.Civ.App., 123 S.W. 2d 413, writ dismissed.

Notwithstanding the fact that the Gregg County District Court judgment cancelled the "pooling agreement,", and that judgment was presented to, and undoubtedly relied upon by, the Railroad Commission in granting said permits, (this for the reason that the Commission had theretofore refused to grant permits on the .25-acre and the .67-acre tracts), the undisputed testimony showed that at the time of the hearings before the Commission, and at the time of the trial of this cause, the parties recognized the continued validity and existence of the "pooling agreement," and Ida Richey was still being paid her proportionate share of the royalties on the combined tracts thereunder. This fact, however, was not made known to the Commission when it heard her application. It also was further shown that such payments were not based upon the ratio the .67 of an acre bore to the combined tracts, but on a ratio of one acre to the combined tracts, thus strongly indicating that the .25-acre tract and the .67-acre were considered as one tract and as including all of the lands between the 20-acre tract on the north and the lands of Armstrong on the south, as both Richey and York manifestly intended the 1912 conveyance to include.

Under such circumstances, even if it be conceded that the .25-acre tract and the .67-acre can be segregated from the 20-acre tract, they should be treated as one tract for development purposes, and cannot be segregated from each other for the purposes of securing an exception to Rule 37, merely because it was discovered in 1935, after this area had been developed for oil, that the field notes to the .67-acre tract lacked 42 feet of extending up to the south line of the 20-acre tract, when the owners of these lands had since 1912 assumed that they did, and had leased their lands on such assumption, obviously intending that this 42-foot strip be included in these consolidated leases.

■ Considering now the permit first granted,—i. e. that granted to Taylor on the .25-acre strip on June 29, 1937,—in the light of conditions then existing; we conclude that it was then authorized. This for the reason that if these two small tracts be deemed as subdivided from the 20-acre tract in 1937, as we conclude they must; and treating the combined tracts as they theretofore existed under the "pooling agreement," such combined tract was entitled to at least one additional well thereon. This for the reason that as shown by the accompanying map and the testimony on the trial hereof, this area was at a drainage disadvantage because of density of wells to the east and southeast of this location. And if the combined tracts be treated as one, and entitled to an additional well, it will be sustained even though granted on an unauthorized subdivision thereof and without reference to the combined tract. Railroad Com'n. v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967; Humble Oil & Refining Co. v. Lasseter, Tex.Civ.App., 120 S.W.2d 541. This well had been drilled prior to the Commission's order of October 1, 1937, granting two additional permits for wells in this immediate vicinity.

■ No contention is made that these two additional wells, as located, were needed to prevent waste. And it is manifest that if the .25-acre tract and the .67-acre tract be treated as one tract, in view of the location of wells on the surrounding tracts, two wells on such combined area aggregating only .92 of an acre were not only not needed to prevent confiscation, but if permitted would enable the owners of such .92-acre, under proration rules applicable thereto, to effectually confiscate oil from beneath adjoining tracts. And this would be true assuming there was a diversity of ownership of these two tracts as between G. W. Richey and his wife, Ida Richey. It was shown that, disregarding the subdivision as between these small tracts, the well on the .25-acre tract, admittedly community property of G. W. and Ida Richey, would give to Ida Richey, under the facts and circumstances, by participating therein, a fair opportunity to recover her fair share of the oil in place beneath the .67-acre tract, even if that tract be deemed her separate property. The trial court was therefore correct in holding the Ida Richey permit on the .67-acre tract invalid.

■ Nor are we prepared to hold that in view of all the facts and circumstances, and treating the three tracts here involved as a combined tract of 20.92, or approximately 21 acres, the Louise Carr well was not authorized thereon in addition to the permit granted on the Taylor .25-acre tract. While it is manifest that it was not allowed nor located by the Commission on that basis, still, if it were so authorized, under the holding in the Century case (Railroad Com'n. v. Magnolia Petroleum Co., supra.), the permit should not be stricken down because of an improper location.

■ While the area to the north and west of such 21-acre tract were not as densely drilled as this tract, without the additional Louise Carr well thereon, the areas to the east, southeast, and south were more densely drilled. A reference to the accompanying map shows that the 10-acre block adjoining the north 10 acres of the 20-acre tract here involved has four producing wells, or one well to each 2½ acres. The 10 acres south of that, adjoining on the east the south half of the 20-acre tract here involved, shows four producing wells and another authorized, or a density of one well to each 2 acres. To the south and southeast of this 20-acre tract, on a tract of 12 acres shown on said map is the Marine et al. G. W. Richey lease, with five wells thereon, or a density of one well to each 2.4 acres. In view of these facts we cannot say that the Commission acted arbitrarily, even though it did not grant such well on that ground, in authorizing the Louise Carr well on the combined 21-acre tract, making an overall density on that tract of one well to each three acres. That being true, the trial court did not err in sustaining that permit also.

■ All of the original defendants in the trial court, whether appellant or appellee here, complain of the action of the trial

court in consolidating the three cases. While, as stated, such consolidation added materially to the volume of the record herein, and created considerable confusion; from what has been said it is clear that there was such interrelation of issues and interests as between these several tracts that we are not prepared to say that the trial court abused its discretion in consolidating the suits. Colvin v. Colvin, Tex. Civ.App., 91 S.W.2d 910; 1 Tex.Jur. Sec. 65, p. 682.

We have not undertaken to discuss the many contentions urged by the several parties hereto in the numerous briefs filed, nor the many cases cited. We are not to be understood as passing upon the validity of the Gregg County judgment as between the parties thereto, nor the validity of the fee titles claimed. Our determination of the issues involved is confined to the application of the conservation laws and rules of the Commission to the situation of the parties as they existed at the time those laws and rules became applicable to the lands involved, and as leased by the respective parties for oil development purposes. In so doing, we have endeavored to apply, without citation or discussion of the cases, the rules laid down by this court in numerous cases which have come before us involving Rule 37, and as modified or approved by the Supreme Court.

From what has been said above, and under the conclusions reached as indicated, it follows that the judgment of the trial court is in all things affirmed.

Affirmed.