### DAILEY et al. v. RAILROAD COMMISSION et al.

#### No. 8928.

Court of Civil Appeals of Texas. Austin.

Oct. 18, 1939.

Rehearings Denied Nov. 15, 1939.

220

Palmer Bradley, John E. Cook, and Andrews, Kelley, Kurth & Campbell, all of Houston, for appellants.

Gerald C. Mann, Atty. Gen., and Edgar Cale, Asst. Atty. Gen., for appellee Railroad Commission.

Fouts, Amerman & Moore, of Houston, for appellees Harrison Oil Co. and J. S. Abercrombie Co.

BLAIR, Justice.

This is a Rule 37 case. It arose as follows: In April, 1919, O. H. Pollard acquired title to the 20-acre tract of land in question by deed, which land is in what is now the Old Ocean Field, in Brazoria County. Appellants are the children, heirs and present owners of the 20-acre tract of land. O. H. Pollard acquired the land some seven months before the first so-called state-wide 150–300 feet oil well spacing rule was promulgated by the Commission, and some fifteen years before the first producing well was brought in in the Old Ocean Field, in 1934. On October 28, 1937, the Commission promulgated the following special Rule 37 applicable to the Old Ocean Field:

"No well for oil or gas shall hereafter be drilled nearer than thirteen hundred and twenty (1320) feet to any other completed or drilling well on the same or adjoining tract or farm, and no well shall be drilled nearer than six hundred and sixty (660) feet to any property line, lease line, or subdivision line; provided that the Commission, in order to prevent waste or to prevent the confiscation of property, will grant exceptions to permit drilling within shorter distances than above prescribed whenever the Commission shall determine that such exceptions are necessary either to prevent waste or to prevent confiscation of property."

On May 17, 1938, appellants filed with the Commission an application to drill one oil well on the 20-acre tract, under the exception to the Rule to prevent confiscation of property, which after notice and hearing was denied by the Commission; and on appeal to the trial court the Commission's order was sustained; hence this appeal.

■ Under the facts stated the land owners were as a matter of law entitled to drill one well on the 20-acre tract, and the Commission acted arbitrarily and unreasonably in denying the permit. The exceptions to prevent waste or to prevent confiscation as used in the special rule applicable to the Old Ocean Field are the same as have been provided for in each and every Rule 37 promulgated by the Commission. In the case of Railroad Commission v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967, 971, the Supreme Court construed a similar Rule 37 and its exceptions as follows:

"By its language the rule is cast into two distinct parts. The first deals with a spacing pattern for the entire field and for wells generally; the second, with specific wells, to be drilled as exceptions to the general rule. These two parts compose the entire rule, the one as much as the other, and must be construed together."

See also Gulf Land Co. v. Atlantic Ref. Co., Tex.Sup., 131 S.W.2d 73.

This court had occasion to pass upon the exact question here presented in the cases of Nash v. Shell Petroleum Corp., Tex.Civ.App., 120 S.W.2d 522; Shell Petroleum Corp. v. Railroad Commission, Tex.Civ.App., 116 S.W.2d 439; and Stanolind Oil & Gas Co. v. Railroad Commission, Tex.Civ.App., 96 S.W.2d 664; holding in the Nash case that [120 S.W.2d 523]:

"One of the main purposes of this exception was to protect the vested right of capture of owners of tracts so small or of such irregular shape as to preclude development under the general rule. The Commission has uniformly given this exception this construction, so far as we have been able to determine. * * * Whether the Commission had the power to omit the exception altogether, and apply the general rule to all tracts too small or of too irregular shape to develop under the rule, regardless of the date of the subdivision, does not now concern us. The Commission did authorize the exception. That it had the power to do so has never been seriously questioned; but, on the contrary, has been uniformly recognized. Having made the exception, we have reached the conclusion that it did not have the power to limit it to subdivisions antedating the rule."

■ It has been the uniform holding of this court that the inherent right of the landowner to recover the oil beneath his land is the primary basis for the exception to prevent confiscation or to protect vested rights, and that such right is deemed to outweigh other consideration for which the rule was promulgated. The Supreme Court so construed the rule and its exceptions in the case of Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 99 A.L.R. 1107, holding that the exception to protect vested rights must be construed in connection with the rules of property in oil and gas; that each owner must have a fair opportunity to recover his oil through wells located on his land; that the exercise of the police power under

Rule 37 and its exceptions does not change the rule of property, but merely regulates and controls the manner of its use and enjoyment; and that the primary rule of ownership of property is still operative. And both the courts and the Commission, until the instant case, have uniformly held that since the Commission made the exception to prevent confiscation or to protect vested rights, it must apply such exception where a person owns a tract of land too small or irregular in shape to be drilled under the general spacing provision of the rule, no question of voluntary subdivision arising; and to permit the drilling of at least one well, which the landowner is entitled to drill as a matter of law.

Appellees Harrison Oil Company and J. S. Abercrombie Company seek to justify the action of the Commission in denying the permit to drill the well in question upon the ground that they offered to pool appellants' property with adjoining acreage, alleging that under such arrangement appellants would obtain all their oil, and in consequence their vested rights to the oil would be protected. If it be assumed that the conservation statutes authorize the Commission to require pooling of acreage and that such pooling is not inhibited by the fundamental laws of both the state and the nation, upon which question we do not pass, a complete answer to the pooling contention is that the spacing rule in question does not provide for the pooling of lands, but provides that the Commission will by exception protect the vested rights of the owner of small or irregular tracts of land by permitting closer drilling than the general spacing distances prescribed in the rule. The Commission cannot arbitrarily require any pooling of acreage where it has no rule or regulation prescribing and defining pooling. The pooling of lands would necessarily curtail the owners' free use and enjoyment of them, and would therefore necessarily require that pooling must be defined with such reasonable certainty as the subject-matter dealt with will admit of; and, when so defined, the pooling rule or regulation becomes the guide or criterion governing the Commission in passing upon any application to require pooling. Manifestly, the fundamental law of both the state and the nation would not permit the Commission to determine on the spot such far reaching limitation of the right or use of private property, but would require that such matters shall be controlled by due process of law and freedom of contract. And having promulgated the special spacing rule in question providing for an exception to protect private rights in the use of property, the Commission cannot refuse to apply that exception where, as in the instant case, the facts require its application.

But appellees contend that the Commission had the discretionary power to refuse the permit upon the ground that because of a very high and dangerous gas or reservoir pressure the drilling of the well would cause great danger, and would cause waste resulting from the drilling of the well. The first producing well was brought in in 1934, and the wider or 40-acre spacing rule was not promulgated until some three years later, in 1937. The wider spacing rule was predicated upon the highly dangerous reservoir pressure; but it nevertheless provided for an exception to protect vested rights or to prevent confiscation. Having made the exception, the Commission does not have the right to limit the exception so as to nullify it. This the Commission has done, if it did do so, by refusing to apply it because of the highly dangerous gas or reservoir pressure prevailing throughout the entire field. The exceptions to prevent waste and to prevent confiscation of property are a part of the Rule 37 in question, "the one as much as the other, and must be construed together." Railroad Commission v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967, 971; Gulf Land Co. v. Atlantic Ref. Co., Tex.Sup., 131 S.W.2d 73. The Commission cannot promulgate a rule or exception to it, and then refuse to apply the rule or exception under a state of facts which would destroy the rule or exception. Brown v. Humble Oil & Refining Co., supra. If the hazards or dangers existed, the Commission should not have provided for an exception; but as to its statutory or constitutional right to do so we do not pass. Such question is not here presented because the Commission made the exception to the rule, and must apply it where applicable.

Appellees Harrison Oil Company and J. S. Abercrombie Company seek to dismiss this cause upon the ground of lack of interested and, in the alternative, of necessary parties. The basis of this contention is that the appellants had executed an oil and gas lease covering the 20-acre tract, "which was outstanding, and appellants had no right to enter upon the possession

of the land in controversy or drill a well thereon and therefore showed no right to any permit in any event; and in the alternative, if any right could issue, said cause should be dismissed for lack of necessary parties in that the title claimed by appellants at the time of the trial was outstanding and appellants show no right to sue."

Appellees have not briefed this counterproposition, and do not show that the matters were urged in the trial court. In any event, the contention is without merit.

■ The lease was not executed until after appellants' application to drill the well had been denied by the Commission. The case was tried on amended pleadings, which do not show if this suit were filed before the execution of the lease. Appellants were the fee owners of the land and the royalty owners under the lease. Under these facts they were interested parties and affected by the order denying the well. Section 8 of Art. 6049c, R.S., Vernon's Ann.Civ.St. art. 6049c, § 8, provides that "any interested person" affected by any rule or regulation of the Commission made or promulgated under the conservation laws shall have the right to appeal to the courts to review unjust and unreasonable action.

In accordance with our above conclusion, we reverse the judgment of the trial court and remand the cause with instruction to the trial court to grant the ancillary injunctive relief as prayed for by appellants.

Reversed and remanded.