Hughes & Monroe, by Ted Monroe, and Curt Stiles, all of Dallas, for appellant.

George P. Blackburn, State's Atty., of Austin, for the State.

WOODLEY, Commissioner.

The conviction is for fraudulently receiving and concealing stolen property of the value of $50 or more; the punishment, 2 years in the penitentiary.

The indictment alleges that certain guns, including "1 double barrel Springfield 16 guage shot gun, 1 .22 Winchester automatic rifle, 1 .22 Hi-Standard automatic pistol, 1 9 M.M. 'Chec' automatic pistol, and 1 6.35 M.M. Belgian automatic pistol" owned by Marvin Fogleman and acquired from him by theft were fraudulently received by appellant from Jimmie Lee Broyles with knowledge that the guns had been so acquired.

Mr. M. M. Fogleman testified that his store in Kaufman had been burglarized, and that 16 or 18 guns were stolen; that he recovered among other of these stolen guns "1 double barrel Springfield 16 guage shot gun (the same description as appears in the indictment), 1 .22 Winchester automatic (not described as being a rifle), 1 High Standard automatic pistol (no caliber mentioned), 1 9 MM *Czech* automatic pistol, and 1 *635* MM Belgian automatic *pearl handle* pistol."

Officer J. H. Sawyer testified that he recovered from appellant seven guns. His description of five of these guns is the same as the foregoing description given by Mr. Fogleman.

Broyles testified that he was serving time in the penitentiary for burglary; that following the burglary, where he got the guns, he contacted appellant at his place of business in Dallas and sold him 6 or 7 of the guns.

It is not shown that the burglary referred to by Broyles or of which he was convicted, was the burglary of premises owned by Fogleman.

It may be observed that there is nothing in the description of the guns sold to appellant which might distinguish them from other guns of the same make, caliber and class, nor to identify them as belonging to Mr. Fogleman.

No witness testified that the guns sold to appellant by Broyles belonged to Marvin Fogleman, nor were the guns found in appellant's possession identified as being the guns received from Broyles after having been stolen from Mr. Fogleman.

It is further noted that in the indictment the owner of the property is alleged to be Marvin Fogleman, while the witness who testified that he owned the burglarized premises and the guns is M. M. Fogleman.

It follows that the evidence is insufficient to sustain the conviction.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

**HUMBLE OIL & REFINING CO. et al. v. CARR et al.**

No. 9979.

Court of Civil Appeals of Texas. Austin.

Oct. 31, 1951.

Rehearing Denied Nov. 21, 1951.

R. H. Whilden, Houston, Dan Moody, and J. B. Robertson, all of Austin, for Shell Oil Co.

Rex G. Baker, Nelson Jones, W. J. Merrill, and Dillard Baker, all of Houston and Powell, Wirtz & Rauhut and J. A. Rauhut, all of Austin, for Humble Oil & Refining Co.

Price Daniel, Atty. Gen., and Charles E. Crenshaw, Asst. Atty. Gen., for Railroad Commission of Texas.

Blair & Randle and M. B. Blair, Austin, for A. P. Carr, Trustee.

GRAY, Justice.

This is a Rule 37 case, and is the third appeal involving the validity of permits to drill a well on the .67-acre tract of land under consideration here. The opinions in the two prior appeals will be later noticed.

Appellants have appealed from a judgment sustaining a permit to drill a well on a .67-acre tract of land in Gregg County. Actually, the permit is to reopen and produce oil from a well already drilled on the tract. The permit in question here was granted on May 17, 1948, " * * * to prevent confiscation of property."

For an understanding of the questions here presented, a summary of the facts, the prior litigation affecting the well and the title to the .67-acre tract of land on which it is located, and, also, some history of the title to pertinent adjacent tracts follows:

At the death of the first wife of G. W. Richey in 1898, there was a 40-acre tract of land belonging to their community estate. It is the west 20 acres of this tract that is involved here, and there is no question as to parties. In 1899, G. W. Richey married his second wife, Ida. During the year 1912, the .67-acre tract was acquired by deed from W. H. York to G. W. Richey. This deed described the tract by metes and bounds and called the tract one acre. Apparently, after oil was discovered in the East Texas Field in 1930, it was determined that there was a strip of land 42 feet wide and containing .25 acres lying between the above 20-acre tract and the .67-acre tract which was not included in the York deed. This .25-acre tract, claimed by G. W. and Ida Richey, was leased in 1935 by them to R. G. Armstrong for oil and gas development. Thereafter, in 1937, permits were granted to drill one well on the .67-acre tract, one on the .25-acre tract, and one additional well on the 20-acre tract and which was located on the southwest portion of that tract. These three cases were consolidated and on appeal to this Court, the permits for the well on the .25-acre tract and the 20-acre tract were sustained, but the well on the .67-acre tract was cancelled, all as is shown by Judge Baugh's opinion in Richey v. Shell Petroleum Corporation, Tex.Civ.App., 128 S.W.2d 898. Error dis. judg. cor. We refer to the map set out in that opinion to show the location of the tracts of land involved here.

Pending the above appeal, a well was drilled on the .67-acre tract, but was shut down by court order. Also, wells were drilled on the .25 acres and the 20 acres, which wells are now producing oil.

On June 15, 1931, the owners and lessees of the 20-acre tract and the .67-acre tract (then thought to include the .25-acre tract later determined to be outside of the description contained in the York deed) entered into an agreement incorporating the two tracts into one and the same lease and providing for the proportionate payment of royalties. This agreement is referred to as the pooling agreement. Except as created by this agreement, Ida Richey never had or claimed any interest in the 20-acre tract.

On June 1, 1937, the district court of Gregg County, in Cause No. 8892–A, rendered a judgment cancelling the above pooling agreement, the leases on the lands therein described, and adjudged that the .67-acre tract of land was the separate property of Ida Richey and that the same had been her separate property since 1912.

On February 20, 1940, a permit was granted to reopen the well on the .67-acre tract " * * * to prevent confiscation of

property and to prevent physical waste." On appeal this permit was cancelled. Railroad Commission v. Shell Oil Co., Tex.Civ. App., 154 S.W.2d 507, affirmed 139 Tex. 66, 161 S.W.2d 1022.

Subsequent to the above decisions, James F. Miller, an assignee of W. H. York brought suit in trespass to try title against G. W. Richey and others, seeking to recover the above .25-acre tract. On appeal a judgment was rendered awarding the same to Miller. Richey v. Miller, 142 Tex. 274, 177 S.W.2d 255, 170 A.L.R. 832.

During their marriage and prior to the discovery of oil in the East Texas Field, G. W. and Ida Richey acquired, as community property, three tracts of land at different times but which adjoined and totaled 167.38 acres. This body of land lies west of and adjoins the .67-acre tract. In 1930 (prior to leasing the .67-acre tract) the 167.38 acres were leased for oil and gas development and oil is now being produced from wells thereon.

Except the well under consideration, there is no well on the .67-acre tract.

Until the decision in Richey v. Miller, supra, 1944, the Richeys had claimed the .25-acre tract. This decision definitely separated the 20-acre and the .67-acre tracts and established an adverse title in the .25-acre tract so separating them.

In Richey v. Shell Petroleum Corp., supra, decided prior to Richey v. Miller, the court treated the .25-acre tract as community property of G. W. and Ida Richey and as then combined with the .67-acre tract for oil and gas development. And, further that these combined tracts were subdivided from the 20-acre tract and that this combined area (.25 acres and .67 acres) was entitled to one well. The court said [128 S. W.2d 903]: "Considering now the permit first granted,—i. e. that granted to Taylor on the .25-acre strip on June 29, 1937,—in the light of conditions then existing; we conclude that it was then authorized. This for the reason that if these two small tracts be deemed as subdivided from the 20-acre tract in 1937, as we conclude they must; and treating the combined tracts as they theretofore existed under the 'pooling agreement,' such combined tract was entitled to at least one additional well thereon. This for the reason that as shown by the accompanying map and the testimony on the trial hereof, this area was at a drainage disadvantage because of density of wells to the east and southeast of this location. And if the combined tracts be treated as one, and entitled to an additional well, it will be sustained even though granted on an unauthorized subdivision thereof and without reference to the combined tract. Railroad Com'n v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967; Humble Oil & Refining Co. v. Lasseter, Tex.Civ.App., 120 S.W.2d 541. This well had been drilled prior to the Commission's order of October 1, 1937, granting two additional permits for wells in this immediate vicinity."

In sustaining the permit to drill a well on the .25-acre tract and cancelling the permit to drill on the .67-acre tract, the court said: "No contention is made that these two additional wells, as located, were needed to prevent waste. And it is manifest that if the .25-acre tract and the .67-acre tract be treated as one tract, in view of the location of wells on the surrounding tracts, two wells on such combined area aggregating only .92 of an acre were not only not needed to prevent confiscation, but if permitted would enable the owners of such .92-acre, under proration rules applicable thereto, to effectually confiscate oil from beneath adjoining tracts. And this would be true assuming there was a diversity of ownership of these two tracts as between G. W. Richey and his wife, Ida Richey. It was shown that, disregarding the subdivision as between these small tracts, the well on the .25-acre tract, admittedly community property of G. W. and Ida Richey, would give to Ida Richey, under the facts and circumstances, by participating therein, a fair opportunity to recover her fair share of the oil in place beneath the .67-acre tract, even if that tract be deemed her separate property. The trial court was therefore correct in holding the Ida Richey permit on the .67-acre tract invalid."

The decision in Richey v. Miller, supra, by awarding title to the .25-acre tract to Miller removed the basis for the reasoning

of the court above quoted. It completely changed the status of the .67-acre tract as a voluntary subdivision from the 20-acre tract except so far only as that question is to be determined by the cancellation of the pooling agreement.

In Railroad Commission v. Shell Oil Co., supra [154 S.W.2d 509], the permit was granted " * * * . to prevent confiscation of property and to prevent physical waste." The facts as to the status of title to the .25-acre and the .67-acre tracts were the same as were before the court in Richey v. Shell Petroleum Corp., supra. It is clear from the opinions of the Supreme Court and this Court that the decisions were limited to the issue of waste, and that the decision in Richey v. Shell Petroleum Corp., supra, determined the issue of confiscation, the ground on which the permit here was granted.

■ The decision in Richey v. Miller, supra, has made a material change of conditions affecting the .67-acre tract in its relation to the 20-acre and the .25-acre tracts and prevents the above decisions from being res judicata on the question of the present status of that tract. This is true because those judgments " * * * only adjudicate such matters up to the time the commission acted, and thereafter so long as conditions remain unchanged. If conditions change, rights change, and the governing statutes place the matter of ascertaining such rights and determining the facts relating thereto in the first instance under the jurisdiction of the Railroad Commission." Magnolia Petroleum v. New Process Production Co., 129 Tex. 617, 104 S.W.2d 1106, 1111.

Appellants here argue that the judgment in Cause No. 8892–A, supra, has no effect here because the same was an agreed judgment and is entitled to no more efficacy than a voluntary agreement of the parties.

■ We will first notice this judgment relative to the cancellation of the pooling agreement. In the absence of authority of the Commission to require parties to pool their lands for oil and gas developement (no such rule or authority is here argued), the right to pool their lands for such purposes is controlled by the freedom of the

parties to contract. Dailey v. Railroad Commission, Tex.Civ.App., 133 S.W.2d 219. Error ref. We therefore conclude that, as to the pooling agreement, it is immaterial whether the judgment cancelling it was, or was not, an agreed judgment. There is no question here that the parties are now treating the agreement as being still in force.

■ Appellees here say that the judgment in Cause 8892–A, supra, was not an agreed judgment, and challenge the right of appellants to here attack it. The record shows appellants were not parties to that cause, and further that they assert they are prejudiced by the judgment. These facts establish the right of appellants to collaterally attack that judgment insofar as it may be prejudicial to their rights. Foster v. Christensen, Tex.Com.App., 67 S.W.2d 246, 25 Tex.Jur. p. 681, Sec. 251.

In Richey v. Shell Petroleum Corp., supra, this court had before it substantially the same facts as are presented here relative to the judgment rendered in Cause 8892–A, supra, and said: "While the February 1, 1937, judgment of the District Court of Gregg County cancelled the 'pooling agreement' and the original lease on the .67-acre tract, it was, according to the testimony of G. W. Richey, nothing more nor less than a consent judgment, whereby the .25-acre tract and the .67-acre tract were segregated from the 20-acre tract for the manifest purpose of securing from the Railroad Commission permits for additional wells, as exceptions to Rule 37, which, without such segregation they would not have been entitled to. As such, therefore, that judgment had no more efficacy than a voluntary agreement between the parties would have had. Empire Gas & Fuel Co. v. Railroad Com'n, Tex.Civ.App., 94 S.W.2d 1240, writ refused; Turnbow v. Barnsdall Oil Co., Tex.Civ.App., 99 S.W.2d 1096, writ refused; Atlantic Refining Co. v. Buckley, Tex.Civ.App., 123 S.W.2d 413, writ dismissed."

■ The foregoing quotation refers to the judgment of "February 1, 1937," but it is clear from a reading of the opinion that the judgment referred to is the judgment

dated "June 1, 1937," (the same judgment under consideration here) for the court, in the opinion, said: "In this judgment rendered on June 1, 1937, the trial court found that this .67-acre tract had been the separate property of Ida Richey since 1912." There is no dispute that the parties in interest here were parties to that cause. It is therefore our opinion that the judgment there adjudging the judgment rendered in Cause 8892–A to be an agreed judgment is conclusive here. Hermann v. Allen, 103 Tex. 382, 128 S.W. 115.

In Richey v. Shell Petroleum Corp., supra, the court declined to pass on the validity of the judgment in Cause 8892–A "as between the parties" and "the validity of the fee titles claimed." Those questions must remain undetermined here. Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424.

■ Giving effect, as we must, to the adjudication that the judgment (in Cause No. 8892–A) was an agreed judgment, it must be treated as an agreement of the parties made after the discovery of oil in the East Texas Field.

■ The test for determining whether or not the application for a permit to drill on the .67-acre tract is supported by a good faith claim that the same is the separate property of Ida Richey is stated by the Supreme Court as follows: "Of course, the Railroad Commission should not do the useless thing of granting a permit to one who does not claim the property in good faith. The Commission should deny the permit if it does not reasonably appear to it that the applicant has a good-faith claim in the property. If the applicant makes a reasonably satisfactory showing of a good-faith claim of ownership in the property, the mere fact that another in good faith disputes his title is not alone sufficient to defeat his right to the permit; neither is it ground for suspending the permit or abating the statutory appeal pending settlement of the title controversy."

Magnolia Petroleum Co. v. Railroad Commission, 141 Tex. 96, 170 S.W.2d 189, 191; Trapp v. Shell Oil Co., supra.

Under the record before us appellee must claim title to the .67-acre tract to be in Ida Richey under one or the other (or both) of the following instruments: (1) the judgment in Cause No. 8892–A, or (2) a deed dated May 7, 1934, whereby G. W. Richey deeded the .67-acre tract to Ida Richey and recited it was given in lieu of a deed made in 1933, which had been lost. In either event the title to Ida Richey was acquired by a voluntary conveyance of the parties, and comes within the rule against voluntary subdivisions made after the rule has attached to the field. 31A Tex. Jur. p. 706, Sec. 411, where many authorities are cited supporting the text.

The foregoing conclusion must be considered in connection with what follows rather than what we have already said.

Admittedly the .67-acre tract is not capable of separate development in compliance with the spacing rules unless it is entitled to such development under an authorized exception. Also, admittedly the 167.38 acres of Richey lands lying to the west of and adjoining the .67-acre tract was community property of the Richeys at all times pertinent here.

The 167.38 acre tract was leased by the Richeys to Carl B. Everett on December 30, 1930. Shell Petroleum Corporation acquired this lease and on August 13, 1931, the Richeys executed to it an instrument describing the lands by metes and bounds. The lease on the 20-acre tract was acquired from G. W. and Ida Richey, joined by the children of the first marriage of G. W. Richey, on April 2, 1931. Neither of these instruments included the .67-acre tract, but on April 13, 1931, it (the .67-acre tract) was leased as a separate tract—but treated as inclusive of the .25-acre tract. The only instrument which, at any time, made the .67-acre tract a part of lands capable of development under the rule was the pooling agreement.

■ The rule having attached to the East Texas Field prior to the date of the leases in question, the failure to include the .67-acre tract in any lease except the lease whereby it was leased separately, must be held to be a voluntary subdivision of the tract from the other lands of the Richeys. Humble Oil & Refining Co. v. Rail-

road Commission, Tex.Civ.App., 99 S.W.2d 1052, error ref.; Railroad Commission v. Wood, Tex.Civ.App., 95 S.W.2d 1328, error ref.; 31A Tex.Jur. Sec. 411, p. 708.

Appellees say that the decision in Richey v. Shell Petroleum Corporation, supra, estops appellants to here urge that the lease of the .67-acre tract as a separate tract constitutes a voluntary subdivision of it from the 167.38 acres. A reading of that opinion clearly shows that the court considered the .67-acre tract and the .25-acre tract in their relation to the 20-acre tract, and the permit to drill on the .67-acre tract was cancelled for the reasons stated in the quotations, supra. No issue was made nor decided as to a subdivision of the .67-acre tract from the 167.38 acres, and we think it cannot be said the issue of such subdivision was fairly within the scope of the inquiry there. Davis v. First Nat'l Bank of Waco, 139 Tex. 36, 161 S.W.2d 467, 144 A.L.R. 1.

We conclude that the permit under consideration is invalid. The judgment of the trial court is reversed and judgment is here rendered cancelling it.

Reversed and rendered.