## RAILROAD COMMISSION OF TEXAS V. O. F. WENCKER.

No. 8010. Decided February 10, 1943.
Rehearing overruled March 10, 1943.
(168 S. W., 2d Series, 625.)

*Gerald C. Mann,* Attorney General, *Grover Sellers* and *Fagan Dickson,* Assistants Attorney General, for petitioners.

The Court of Civil Appeals erred in holding that the Railroad Commission had jurisdiction to grant the application for the drilling of the well under changed conditions. It was also error for said court not to reverse said cause and order same dismissed. Stewart v. Smith, 126 Texas 292, 83 S. W. (2d) 945; Edgar v. Stanolind Oil & Gas Co., 90 S. W. (2d) 656; Cleveland v. Ward, 116 Texas 1, 285 S. W. 1063; Gouch v. Jones, 212 S. W. 943, 25 Tex. Jur. 460.

*Harry S. Pollard,* of Austin, for respondent.

On the points in issue: Brown v. Humble O. & R. Co., 126 Texas 296, 87 S. W. (2d) 1069; Magnolia Pet. Co. v. Railroad Commission, 128 Texas 189, 96 S. W. (2d) 273; Magnolia Pet. Co. v. New Process Prod. Co., 129 Texas 617, 104 S. W. (2d) 1106.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit was filed by O. F. Wencker against the Railroad Commission and others for the cancellation of an order of the Railroad Commission denying the application of Wencker for a permit to drill well No. 1 on a 7.8-acre tract of land, and for an injunction against interference with the drilling of such oil well. The trial court directed the Railroad Commission to fix a proper location at a point other than the geographical center of said 7.8-acre tract of land, at which Wencker should be authorized to drill well No. 1. The Railroad Commission appealed to the Court of Civil Appeals, and the judgment of the trial court was affirmed. 161 S. W. (2d) 800.

This Court granted an application for writ of error filed by the Railroad Commission. The application presents three points of error, which are, in substance, as follows: (1) The Railroad Commission had no jurisdiction to grant a permit to drill well No. 2 on so small a tract of land, while the right to drill a first well was in litigation. (2) The Court of Civil Appeals erred in holding that the permit to drill well No. 2 was based upon changed conditions. (3) The trial court and the Court of Civil Appeals erred in overruling petitioner's motion to dismiss this case because same is moot.

This is a Rule 37 case, and is the second appeal of same. The first appeal was decided on April 2, 1941, and is reported in 149 S. W. (2d) 1009.

The rules as to spacing and allowable which were applicable to the tract involved here were promulgated by petitioner on January 22, 1941, in a special order for the Hawkins Field, Wood County, Texas. They were as follows:

"Rule 1. (a) No well shall be drilled hereafter for oil or gas or either of them nearer than nine hundred thirty-three (933) feet to any other completed or drilling well on the same or adjoining tract or farm, and no well shall be drilled nearer than four hundred sixty-six (466) feet from any property line, lease line or subdivision line; provided that, subject to the further provisions hereof, the commission, in order to prevent waste or to prevent the confiscation of property, will grant exceptions to permit drilling within shorter distances than above prescribed whenever the commission shall determine that such exceptions are necessary either to prevent waste or to prevent the confiscation of property. When exceptions to this rule are desired, application therefor shall be filed with the commission fully stating the facts, which application shall be accompanied by a plat drawn to the scale of one inch equalling four hundred (400) feet, accurately showing to scale the property on which permit is sought to drill a well under the exception to this rule, and accurately showing to scale all other completed, drilling and permitted wells on such property; and accurately showing to scale all adjacent surrounding properties and wells. Such application shall be verified by some person acquainted with the facts stating that all facts therein stated are within the knowledge of the affiant true, and that the accompanying plat is accurately drawn to scale and correctly reflects all pertinent and required data. Such exceptions shall be granted only after at least ten (10) days' notice to all adjacent lessees, affected thereby, has been given, and after public hearing at which all interested parties may appear and be heard, and after the commission has determined that an exception to this rule is necessary either to prevent waste or to protect the property belonging to applicants from confiscation. All pending applications shall be amended to conform to this rule before being acted upon.

. "(b) In applying this rule, the general order of the commission with relation to subdivision of properties, shall be observed."

"Rule 15. The proration unit shall be twenty (20) acres, and no acreage shall be assigned to a unit which is more than 1,050

feet from a producing oil well. A tolerance of ten (10) acres on the last well on producing tracts of more than twenty (20) acres shall be allowed where the size and shape of the tract so warrants. Where tolerance is allowed, no acreage shall be assigned to the unit of the last well which is more than 1,280 feet from the well. Units which do not contain as much as twenty (20) acres shall be considered as fractional units. Acreage units or fractions thereof whether containing more or less than twenty (20) acres will be considered, for proration purposes, on the basis of the actual acreage assigned to the individual unit or fractional unit."

E. M. Slaughter owned Block 24 in the Hawkins Townsite in Wood County. In 1929 he bought 13.6 acres lying to the west of and adjoining Block 24. In 1933 he conveyed to the State Highway Department 5.5 acres for road purposes. This road divided the 13.6 acres into two tracts, the one on the north containing 7.8 acres, the land here, involved, and the one on the south containing one acre. In 1938, and before oil was discovered in Wood County, Slaughter executed an oil and gas lease to the assignor of Wencker covering the 13.6 acres, less 5.5 acres conveyed to the State. On December 19, 1940, Wencker applied to the Railroad Commission for a permit to drill well No. 1 upon his 7.8 acre tract, considered as a separate tract from Block 24, as an exception to Rule 37, the well to be located at a point 300 feet east of the west line, and midway between the north and south lines. The Railroad Commission denied this application on January 27, 1941.

Wencker filed suit in the District Court of Travis County to set aside the order of the Railroad Commission denying his application for well No. 1, and for a temporary injunction enjoining the Commission from interfering with the drilling and operation of well No. 1. On February 8, 1941, the trial court refused to grant the temporary injunction, and Wencker appealed to the Court of Civil Appeals. The Court of Civil Appeals on the first appeal held that Wencker was entitled to a permit to drill a "first well" on his 7.8-acre tract, "considered as a separate tract from Block 24," as a matter of law, and remanded the cause to the district court with the following instruction:

"In view of the trial on the merits we hold that if the evidence shows that the Commission acted unreasonably and arbitrarily in refusing the permit to drill the well at the point

requested, then the Commission's order denying the permit should be set aside and it should be enjoined from interferring with the drilling of the well. If the right to the requested location is not established, then the trial court should set aside the order denying the permit to drill a well on the 7.8-acre tract, giving appellant the right to have the Commission fix the point at which the well is to be drilled."

On June 4, 1941, the mandate of the Court of Civil Appeals was filed in the trial court. On June 7, 1941, three days later, Wencker filed his application with the Railroad Commission for a permit to drill well No. 2 on his 7.8-acre tract, the well to be located at a point 330 feet west of the east end of the tract.

On June 28, 1941, a hearing was held before the Chief Deputy Supervisor of the Railroad Commission, and we quote the following from the report of such hearing filed by him with the Railroad Commisison:

"This lease contains 7.8 acres. There is no producing well on it but the judgment of the District Court adjudicating that appellant is entitled to one well thereon, its location to be determined after hearing, has been upheld by the Court of Civil Appeals and writ of error refused by the Supreme Court.

"If the first well is drilled under the court decision and this permit is granted, the density of the tract will be 1 well to 3.9 acres. There are at least 9 wells in the 8 times area so that the density of that area would be approximately 7 acres per well.

"This lease is located in the Hawkins Field where the spacing rule is 467 feet from lease lines and 933 feet between wells.

\*  \*  \*  \*  \*  \*

"The spacing requested is: 330 feet west of the east line; midway between north and south lines."

J. S. Hudnall, an expert witness, was offered by Wencker, and testified that he knew the length and shape of the tract involved, and that a well located in the center "would require all of the acreage to be used in allocating his allowable," and that "if the well were located on the west end 330 feet from the west end, he would have a portion on the east end of the

tract that would not be considered in allocating the allowable." He further testified, as shown by the report, "that if only one well is to be drilled on the tract the best location for it would be in the center of the lease as it would produce more oil there than if located on the east and where it would be affected by the density to the east."

Based upon the report of the Chief Deputy Supervisor, the application of Wencker was granted by the Railroad Commission on July 12, 1941, and the well was "to be located in the geographical center of tract." On August 5, 1941, respondent applied to the Railroad Commission to change the location of the well, but such application was denied.

This case was heard a second time on September 17, 1941, by the district court. The district court's judgment on the merits of the case on the scond trial contains the following findings:

"That plaintiff has failed to show by the evidence as a matter of law that the Railroad Commission and its members acted arbitrarily and unreasonably in denying to plaintiff permission to drill said well No. 1 at the location as applied for in his application for said well No. 1, dated December 19, 1940; and that the Railroad Commission and its members should be directed by the Court to find and fix a proper location at which plaintiff shall be permitted to drill said well No. 1; and the Court further finding that pendente lite the Railroad Commission has granted to plaintiff a permit to drill his well No. 2 upon said 7.8-acre Slaughter tract directing that said well be located in the geographical center of said tract;

"It is accordingly ordered, adjudged and decreed by the Court that the defendants, the Railroad Commission of Texas and its members, be and they are hereby ordered and directed to fix forthwith a proper location, at a point other than the gographical center of said 7.8-acre Slaughter leasehold tract of plaintiff, at which plaintiff shall be authorized to drill the said well No. 1 applied for by plaintiff."

The Court of Civil Appeals affirmed the judgment of the trial court, and held that the Railroad Commission did not intend to grant well No. 2, as a compliance with the decree of the Court of Civil Appeals. It held, also, that the Railroad Commission could not enter any order with respect to well No.

1 while the rights concerning it were in litigation in the courts, but that the Commission did have authority to grant well No. 2 on the same tract while well No. 1 was involved in litigation, "based upon changed conditions." (161 S. W. (2d) 800.)

This tract originally contained 13.6 acres. The State acquired 5.5 acres for road purposes. This left two tracts, one containing one acre and one containing 7.8 acres. It is undisputed that Wencker has one well on the one-acre tract. The application for a permit to drill well No. 2 contained, among other things, the statement: "Number of wells on lease—None." The application did not allege that changed conditions justified more than one well on the tract, and the order of the Railroad Commission granting the permit for such well did not find changed conditions as a basis for such order. The order recited that the well was granted "to prevent confiscation of property and to prevent physical waste," and was to be locate in the geographical center of the tract. This was the first time that such findings had been made in connection with Wencker's 7.8-acre tract. There has been no finding of changed conditions by the Railroad Commission, and the Court of Civil Appeals error in holding to the contrary. The orders of the Railroad Commission entered July 25, 1941, and August 9, 1941, negative any such finding. It clearly appears that if the Railroad Commission had intended to grant the permit on the basis of changed conditions, it would have located the well on the eastern end of the tract, where Wencker claims there was drainage; since the first application was for a well 330 feet east of the west end of the tract. The location of the well in the geographic center was a refusal to adopt or accept the claim of Wencker.

The Railroad Commission contends that it never intended to give respondent two wells on his 7.8-acre tract in this new field, where the spacing rule provided for one well to every 20 acres, but intended by its order to give respondent, on the application for well No. 2, what the Court of Civil Appeals had held he was entitled to as a matter of law,—viz., one well on the 7.8 acres as well as one well on the one-acre tract. We think this contention is conclusively sustained by this record for two reasons: (a) If the Railroad Commission had intended for petitioner to have two wells on this 7.8-acre tract, it would have granted the application for well No. 2 in the neighborhood of where respondent requested it,—towit, 330 feet west of the

east end, where respondent claims drainage from other wells had caused changed conditions, and not at an entirely different point, the geographical center of the tract; and (b), because in granting well No. 2 the Commission acted on the report of its Chief Deputy Supervisor, who conducted the hearing in regard to this well, and granted the permit to drill well No. 2 because of the judgment and opinion of the Court of Civil Appeals, holding that this tract was entitled to one well, the location to be determined by the Commission.

Petitioner was confronted with an unusual situation. The rule required that but one well be allowed to each 20 acres, unless granted under exceptions to such rule. One well had been allowed for the one-acre tract. It will be observed that respondent's application for well No. 1 on the 7.8-acre tract was denied by petitioner. The courts finally held that respondent was entitled to one well, as a matter of law, on the 7.8-acre tract. Immediately thereafter respondent applied for a permit to drill a well on this tract. Respondent contends that such application was for well No. 2, and not for well No. 1 in litigation. Looking through form to substance, it clearly appears that petitioner was undertaking to comply with the orders of the court in giving respondent one well as a matter of law, and it is immaterial here whether the application stated that it was for well No. 1 or for well No. 2. This is plain from the orders of the Railroad Commission, and is conclusively shown by the order of the Commission after such hearing, stating that the well should be located in the center of the tract.

The history of well No. 1, as shown by this record, is long and tedious. In this case the courts finally held that respondent was entitled to a well on the 7.8-acre tract. Petitioner contends that it granted respondent a permit to drill a well, and that order was not appealed from and is final. We presume that respondent has drilled such well, or will do so.

■ The statutes authorizes the Railroad Commission to handle the deltails relating to the production of oil and gas in the State. Article 6004 et seq., Vernon's Annotated Civil Statutes. The Railroad Commission has exclusive original jurisdiction to determine the matter of changed conditions in granting permits to drill wells, subject to the right of appeal to the courts. Magnolia Petroleum Co. v. New Process Production Co., 129 Texas 617, 104 S. W. (2d) 1106; Gulf Land Co. v. Atlantic

Refining Co., 134 Texas 59, 131 S. W. (2d) 73; Brown v. Humble Oil & Refining Co., 126 Texas 296, 83 S. W. (2d) 935, 99 A. L. R. 1107. The Railroad Commission is given the power to determine primarily all fact issues, that is, all issues that are not established as a matter of law; and to permit the courts to pass upon a question not passed on by the Commission would violate such power. Gulf Land Co. v. Atlantic Refining Co., supra; Brown v. Humble Oil & Refining Co., supra.

■ This record shows that the Railroad Commission denied respondent the right to drill well No. 1 on the 7.8-acre tract. It was only after the courts had declared that respondent was entitled to a well on this tract, as a matter of law, that it granted a permit to drill a well thereon, and then ordered that such well be drilled in the center of the tract. It is not shown that the Railroad Commission, independent of court orders, has had presented to it an application for an additional well on the 7.8-acre tract, based on changed conditions; nor has it exercised its independent judgment on such question and granted a permit for an additional well on such tract on changed conditions. Until the Railroad Commission has exercised the powers conferred on it by law over certain matters, its jurisdiction over such matters should not be denied.

We think that when this entire record is considered as a whole it presents no issue of fact to be determined by the courts. The record plainly shows that respondent has a permit to drill a well on this tract of land as ordered by the courts. Consequently this cause is moot, and should be dismissed.

The judgments of the Court of Civil Appeals and of the district court are both reversed, and this cause is dismissed; without prejudice, however, to the right of Wencker to apply again to the Railroad Commission for a permit to drill a well, or wells, on the 7.8-acre tract, based on changed conditions, same to be determined by the Railroad Commission.

Opinion delivered February 10, 1943.

Rehearing overruled March 10, 1943.