Michel T. HALBOUTY et al., Appellants,

v.

W. G. DARSEY, Jr., et al., Appellees.

No. 10717.

Court of Civil Appeals of Texas.

Austin.

July 15, 1959.

Rehearing Denied Aug. 5, 1959.

James Noel, Houston, Powell, Rauhut, McGinnis & Reavley, Austin, for Michel T. Halbouty.

Turner, Rodgers, Winn, Scurlock & Terry, Dallas, for Pan American Petroleum Corp.

Wallace H. Scott, Jr., Walter R. Koch, Austin, for W. G. Darsey, Jr.

Will Wilson, Atty. Gen., James N. Ludlum, 1st Asst. Atty. Gen., Linward Shivers, Paul Floyd, John Wildenthal, Jr., Asst. Attys. Gen., for Railroad Commission.

GRAY, Justice.

This is a Rule 37 case and is an appeal from a judgment sustaining an order of the Railroad Commission granting a permit to W. G. Darsey, Jr., for a well on his .48 acre tract in the Port Acres Field in Jefferson County.

The permit was granted December 22, 1958, "to prevent confiscation and or to prevent physical waste."

Appellant, Michel T. Halbouty, filed this suit against the Commission and Darsey to set aside the above order as being a discriminatory action by the Commission in which it acted arbitrarily, unjustly and unreasonably. He alleged that in addition to general rules of the Commission the following rule for the field became effective June 30, 1958:

> "'Rule 1. No gas well shall hereafter be drilled nearer than thirteen hundred and twenty (1320) feet to any

well completed in or drilling to the same reservoir on the same lease, unitized tract or farm and no well shall be drilled nearer than three hundred and thirty (330) feet to any property line, lease line or subdivision line; provided, however, that the Commission will, in order to prevent waste or to prevent the confiscation of property grant exceptions to permit drilling within shorter distances than herein prescribed whenever the Commission shall have determined that such exceptions are necessary either to prevent waste or to prevent the confiscation of property. When exception to this rule is desired, application therefor shall be filed and will be acted upon in accordance with the provisions of Commission Statewide Rules 37 and 38, which applicable provisions of said rules are incorporated herein by reference.

" 'The aforementioned distances in the above rule are minimum distances to allow an operator flexibility in locating a well, and the above spacing rule and the other rules to follow are for the purpose of permitting only one well to each one hundred and sixty (160) acre proration unit.

" 'In applying this rule the general order of the Commission with relation to the subdivision of property shall be observed.' "

"The pertinent portion of Statewide Rule 37 reads as follows:

" 'Section (a) * * * Such exception shall be granted only after at least ten (10) days' notice to all adjacent lessees affected thereby has been given and after public hearing at which all interested parties may appear and be heard and after the Commission has determined that an exception to such rule is necessary either to prevent waste or to protect property belonging to the applicant from confiscation.' "

Appellant further alleged:

"For the reason that the gas and distillate reserves underlying the small lease of W. G. Darsey, Jr., has a value of less than $20,000.00 and for the reason that the expense of drilling a well to produce such gas and distillate reserves would not be less than $250,000.-00. For this reason, *Permitee* has no realizable property interest of any value in the gas and distillate underlying the above described lease and no confiscation of any property interest could result from the denial of his application for special permit to drill a well on said lease. On the other hand, the drilling of such a well and production of gas and distillate therefrom would result in the confiscation of gas and distillate reserves underlying Plaintiff's various leases in the field and that a large amount of gas and distillate produced from such well after the recovery of gas and distillate of the value of about $20,000.00 would be gas and distillate drained and confiscated from beneath the leases belonging to Plaintiff. No waste would or could result from denial of the above described application granted to Permittee on December 22, 1958."

He alleged an unconditional offer to pool the .48 acre tract with other acreage in the field, that the permit afforded Darsey a method to drain great quantities of plaintiff's gas and condensate and further that:

"The gas bearing sand in this area of the Port Acres Field is such that natural pressure causes the gas and condensate to move toward areas of lower or reduced pressure. When wells are drilled from the surface into the gas sand and produce, areas of reduced pressure are created at the bottom of wells, and reservoir energy of the gas bearing sand drive the gas and condensate to the well bore and up through the well to the surface. The gas and condensate readily migrate through the sand from areas of higher pressure to areas of lowered pres-

sure at the bottom of the well, across and without reference to the surface property lines. The drilling and operation of Permittee's No. 1 Lavely Unit will enable it to drain, produce and confiscate to the use of Permittee large quantities of gas from the lands of others, including Plaintiff, in said Port Acres Field. Said movement and drainage from properties toward the Permittee's No. 1 Lavely Unit of appreciable quantities of gas and condensate will reduce in a large and inestimable amount the quantity of gas and condensate which Plaintiff's wells would otherwise recover. The Plaintiff has drilled no well closer than 330 feet to lease lines and has unitized its leases when the acreage contained in individual leases was less than 160 acres in size to fulfill the Railroad Commission policy for this field that one well could drain 160 acres, therefore, the Permittee has obtained a great spacing and draining advantage over the Plaintiff. Under the laws of this State, Plaintiff has no legal recourse against Permittee for the value of the gas and condensate which the No. 1 Lavely Unit will cause to drain from Plaintiff's properties, and the granting of the permit to drill and operate said well is unreasonable and unjust in fact, and discriminatory in favor of Permittee as against Plaintiff, and does and will constitute an unlawful taking of Plaintiff's property for the benefit of Permittee, without compensation to Plaintiff, and said orders deny Plaintiff the equal protection of the law and deprive Plaintiff of his property without due process of law, in violation of the 14th Amendment of the Constitution of the United States and Section 19, Article I of the Constitution of Texas [Vernon's Ann.St.]."

Appellant, Pan American Petroleum Corporation, intervened in the cause. It alleged substantially the same facts alleged by Halbouty and further that there are 500 small tracts in the field which would be entitled to a well and that if permit is granted on each of such small tracts the orderly development of the field would be prevented, and that there is set for a hearing before the Commission an application for an amendment to the rules for the field, that the well location is in a residential area and that the drilling of the well and its production would create a hazard to life and to property.

Halbouty and Pan American are both owners and operators in the field. The .48 acre tract is not a voluntary subdivision and the permit in question is for the first well on the tract.

Special exceptions were sustained to the pleadings, appellants declined to amend and their causes were dismissed. Halbouty says these special exceptions were based on the proposition that the "permittee has a right as a matter of law to drill his first well." Under the facts here, or rather under the facts here alleged, this statement is substantially correct.

The briefs discuss the merits of the pleadings rather than the special exceptions and we will so direct our attention.

Appellants appear to say that the permit to drill the well on the .48 acre tract should be denied because: (1) the cost of drilling the well exceeds the value of the oil and gas under the tract; (2) if the well is drilled and produced there will be drainage from the surrounding tract; (3) there is an unconditional offer to pool the .48 acre tract with other tracts in the field; (4) there is set for hearing before the Commission an application to amend the rules for production and operation in the field; (5) the granting of permits to drill on small tracts in the field will prevent its orderly development; (6) the drilling and production of the well, because of the location of the .48 acre tract, will create a hazard to life and to property, and (7) generally the Commission violated its discretion in granting the permit.

■ Admittedly the .48 acre tract is not an unlawful subdivision for which reason no issue of waste is here presented. Railroad Commission of Texas v. Delhi-Taylor Oil Corp., Tex.Civ.App., 302 S.W.2d 273. Er. ref. n. r. e. Also the tract is not of such size and shape to meet the acreage and distance requirements of the spacing rule applicable to the field, however admittedly it meets the requirements for an exception under Statewide Rule 37a. As such it is entitled to a well. Kraker v. Railroad Commission, Tex.Civ.App., 188 S.W.2d 912. Er. ref. w. o. m.; Dailey v. Railroad Commission, Tex.Civ.App., 133 S.W.2d 219. Er. ref.; Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 87 S.W.2d 1069, 99 A.L.R. 1107, 101 A.L.R. 1393, where Rule 37 and its exceptions were considered and also the rules of ownership, convenience and vested rights. Citation of additional authorities on this well settled question is not deemed necessary.

■ If appellees were denied a permit to drill on their .48 acre tract then clearly they would be denied the right to recover their fair share of the oil and gas in place under their land. The very purpose of Rule 37 by providing for exceptions, is to protect this right and it has been so declared. In Stanolind Oil & Gas Co. v. Railroad Commission, Tex.Civ.App., 96 S.W.2d 664, 665, this Court said:

"Total deprivation of the landowner's vested right to a fair share of the recoverable oil in place under his land is not a proper remedy under our present conservation laws and rules promulgated thereunder."

■ The law recognizes the right of an owner to recover the oil and gas under his land as a vested right and one of which he cannot be deprived by the Commission. This being true the right is not to be denied because it appears to be uneconomical. This vested right to recover such oil and gas is to be considered in connection with the law of capture which is also recognized as

a property right. Corzelius v. Harrell, 143 Tex. 509, 186 S.W.2d 961, 964; Brown v. Humble Oil & Refining Co., supra. The probability that oil and gas from surrounding tracts would drain to the .48 acre tract could not be lawful reasons for denying the permit because such fact is only a part of the law of capture.

■ The unconditional offer to pool the .48 acre tract with surrrounding tracts in the field can in no event defeat the permit under the facts here. This is not a matter over which the Commission has been given jurisdiction to require but is a subject for voluntary agreement. Dailey v. Railroad Commission, supra.

■ The facts are to be considered as of the time the Commission acted and the fact that there is now, or at the time of trial there was, an application pending before the Commission to amend the rules applicable to the field would in no event govern the Commission's action. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, 82.

■ The orderly development of oil and gas fields and the production of oil and gas from such fields are matters vested in the Commission. For these purposes the Legislature has vested it with authority to make rules. It has promulgated rules for this purpose and the special permit here was granted by authority of the Commission's rule. See Gulf Land Co. v. Atlantic Refining Co., supra. Moreover to now say that small tracts in the field are not entitled to be drilled under rules of the Commission would be to deny them the right of separate development even though it may result in densely drilled areas. Kraker v. Railroad Commission, supra.

■ The fact that the drilling and production of the well on the .48 acre tract, because of the location of the tract, may create a hazard to life and to property would not violate the rule under which the

permit was granted and the Commission could not refuse to apply the rule, exception, under a state of facts that would destroy such rule. Dailey v. Railroad Commission, supra.

■ It may be said generally that the Commission is vested with authority and charged with the duty of conserving oil and gas and that in doing so it is its duty to see that oil and gas fields are drilled and produced in an orderly and scientific manner. However in so doing it cannot violate vested rights. We deem it not necessary to cite authorities in addition to those supra for this statement. The Commission has discretion in the exercise of the powers committed to its jurisdiction but no appellate court decision of this State has extended the exercise of this discretion to the denial of vested rights. We have not been cited to any authority, and we know of none, that would authorize the Commission to deny appellee a permit to drill a first well on his .48 acre tract and thereby, in effect, confiscate his property to the use and benefit of surrounding tracts with or without compensation. Particularly applicable to the arguments of appellants is the statement of the court in Stanolind Oil & Gas Co. v. Railroad Commission, supra, that:

"Exceptions to the rule, granted to protect vested rights, for which the rule expressly provides, presuppose some resultant waste, or other detriment. The inherent right of the landowner to obtain his fair share of the oil in place under his land is the basic consideration for the exception to the rule 'to protect vested rights,' which is deemed to outweigh other considerations for which the rule was promulgated. The commission has ample power to pass such rules or orders as may be necessary to minimize the deleterious effects flowing from exceptions to the rule."

The judgment of the trial court is affirmed.

Affirmed.