**COLORADO INTERSTATE GAS COMPANY, Appellant,**

v.

**H. F. SEARS et al., Appellees.**

**No. 11017.**

Court of Civil Appeals of Texas.

Austin.

Nov. 14, 1962.

Rehearing Denied Nov. 28, 1962.

Lewis M. Poe, Edwyn R. Sherwood, Colorado Springs, Colo., R. Dean Moorhead, Austin, for appellant.

Will Wilson, Atty. Gen., H. Grady Chandler and Linward Shivers, Asst. Attys. Gen., Austin, Culton, Morgan, Britain & White, Ray W. Richards, Amarillo, for appellees.

RICHARDS, Justice.

Colorado Interstate Gas Company appeals from a judgment of the 53rd District Court of Travis County, Texas, upholding an order of the Railroad Commission of Texas granting H. F. Sears a permit to drill a well on 7.1 acres of land as an exception to Rule 37. The acreage is situated in the John W. Pritchett Survey, in Potter County, Texas, and is located within the West Panhandle Field, which under the present rules of the Railroad Commission permits only one well to each 640 acre tract. For brevity Colorado Interstate Gas Company, appellant, will be referred to as "Colorado", appellee Railroad Commission of Texas will be referred to as the "Commission" and appellee H. F. Sears will be referred to as "Sears".

The tract involved is surrounded on three sides by leases held by Colorado and on the fourth side by lease held by Panhandle Eastern Pipeline, each of which leases contains 640 acres on which a producing gas well is located. Sears filed an application with the Commission for an exception to Rule 37 and for a permit to drill a well for the recovery of gas on the 7.1 acre tract, which application was set for hearing. Thereafter, Colorado filed a written protest to the application on the grounds (1) that Sears had no property interest of any value in the gas underlying the tract and a denial of the application would not result in confiscation of any property interest of Sears; (2) that the granting of the permit and the subsequent drilling of the well and production of gas therefrom would result in confiscation of gas reserves underlying Colorado's leases in the field; (3) that the granting of the permit and the subsequent drilling of a productive well would constitute an unlawful taking of Colorado's property and Sears' benefit without compensation, thereby denying Colorado of the equal protection of the law and depriving it of its property without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States and Section 19, Article I of the Constitution of Texas, Vernon's Ann. St.; (4) that no waste would result from a denial of the application; and (5) in the event a permit should be issued that it be restricted so that if a well productive of gas be drilled upon the tract, the total allowable to be granted the well would be limited to a total volume of gas from the well which

would not exceed the total amount of gas underlying the tract.[1]

After the hearing the Commission issued its order granting Sears the requested permit without restrictions. Motion for rehearing was filed by Colorado to the Commission, which motion was denied and thereafter Colorado appealed from the Commission's order to the 53rd District Court of Travis County. The Trial Court rendered judgment upholding the validity of the order from which ruling Colorado has perfected this appeal.

For its first and second points of error Colorado asserts that the Trial Court erred (1) in upholding the validity of the Commission's order granting the unrestricted permit to Sears since it was not supported by substantial evidence and (2) that Sears failed to sustain his burden of establishing that confiscation would result by a denial of the permit.

It is admitted that this case does not present any question of allocation between wells and is not an attack on the allocation formula in the West Panhandle Field. No question of voluntary subdivision is involved. The sole question presented under Colorado's first two points of error is whether there was substantial evidence adduced before the Trial Court to support the finding of the Commission and the Court that the issuance of the permit was necessary to prevent confiscation.

William H. Price, a witness for the Commission and Sears, testified that if Sears was not permitted to drill a well on the tract in question, there could be no other way he could recover the gas underlying his land and that in such event all of his gas would be confiscated by adjoining producing tracts and that 56% of the gas underlying the tract had already been drained to other adjoining leases. Colorado's witness, Van Horn, testified that there was no way Sears could recover his gas without drilling a well

unless he could share in production on an adjoining tract. On cross-examination he testified that there would be confiscation of Sears' gas unless he was permitted to drill a well or unless some type of unitization could be obtained. Bernie B. Morgan, Colorado's vice-president in charge of production, testified that if Sears was not permitted to drill on his tract, there was no other way he could recover his gas unless unitization could be accomplished. On cross-examination he admitted that none of Colorado's leases contained pooling clauses or unitization authority.

Colorado contends that Sears has no right as a matter of law to the permit upon the 7.1 acre tract and that the burden of proof was upon Sears to establish that if the permit is not granted he will be denied a fair chance to recover the gas in place underlying his property or its equivalent in kind, relying upon Railroad Commission v. Williams, Tex.Civ.App., 356 S.W.2d 131. In that case the Commission denied the permit as an exception to Rule 37 on the ground that the applicant failed to prove confiscation since there was substantial evidence to show that he could have produced his gas from an existing well on an adjoining tract. In the instant case neither Sears, as lessee, nor his lessor own any other land within the drainage area.

In Williams the Court stated the law governing the granting of exceptions under Rule 37 to prevent confiscation of property as follows:

"The basic right of every landowner, including small tract owners, is to a fair chance to recover the oil and gas in and under his land, or their equivalents in kind. Gulf Land Co. v. Atlantic Refining Co., [134 Tex. 59, 131 S.W. 2d 73], cited just above. This means that the owners and lessees of some small tracts are entitled to a well on their tracts as a matter of law because

1. These grounds of protest were affirmatively pleaded by Colorado in its petition before the Trial Court.

there is no other way to give them a fair chance to recover the oil and gas under their land. Stanolind Oil & Gas Co. v. Railroad Commission, [96 S.W. 2d 664], cited just above. But they must first prove confiscation or waste.

"The rule of fair chance or fair share is the reason for the 'confiscation' exception to Rule 37 whereby an owner or lessee can get a well permit for a small tract. Brown v. Humble Oil & Refining Co., 1935, 126 Tex. 296, 83 S.W.2d 935, 87 S.W.2d 1069, 99 A.L.R. 1107, 101 A.L.R. 1393; Railroad Commission of Texas v. Gulf Production Co., 1939, 134 Tex. 122, 132 S.W.2d 254. In fact, it has been held that the proper test of confiscation under Rule 37 is whether an owner, with the wells which already exist, has been accorded a fair and equal opportunity with other producers of surrounding tracts within the drainage area to recover his fair share of the oil in place beneath his tract. If he has, no confiscation results. Gulf Oil Corporation v. Smith, Tex.Civ.App. 1940, 145 S.W.2d 280 (error refused)." (356 S.W.2d 136)

■ It is our opinion that Sears has sustained his burden of showing that confiscation of the gas underlying the 7.1 acre tract will result unless he is granted a permit to drill a well thereon to recover his fair share of the gas underlying the tract and that the Commission's order is reasonably supported by substantial evidence.

Colorado also contends that Sears has no property interest of any value in the gas underlying his tract and therefore a denial of the application would not result in the confiscation of any property interest of Sears. The evidence shows that under present proration rules for the West Panhandle Field the production allowable for each well is based upon a formula allowing $\frac{2}{3}$rds of the allowable on the basis of acreage times rock pressure and $\frac{1}{3}$rd on the basis of open flow back pressure. Under such formula a well located on the Sears

7.1 acre tract having similar characteristics as the adjoining wells could produce 1900 MMcf of gas which is 1810 MMcf more than the estimated recoverable reserves underlying the tract amounting to 93.7 MMcf which excess will be drained from the adjoining leases.

Based on the field average price of 12¢ Mcf the value of the gas underlying the Sears tract is $10,800.00 while the average cost of drilling a well in the field is from $35,000.00 to $40,000.00. Under the present allowable formula it is estimated that the well to be drilled on the Sears tract would produce at a rate of 21 times the rate per acre that the wells on the adjoining acreage would be permitted to produce. As a result the value of the flow of the gas produced from the Sears tract under the present allowable would be $228,000.00 compared to the value of $10,800.00 of the gas actually in place under the tract. If the Sears well is permitted to produce under the present allowable, it would produce gas valued at approximately $217,000.00 which would be drained from the adjoining leases.

■ The argument that, since it would cost Sears more to drill the well on his tract than the value of his fair share of the reserves underlying the tract, he has no property interest of any value in the reserves which could be confiscated, has already been answered. In Halbouty v. Darsey, Tex.Civ.App., 326 S.W.2d 528, error ref., N.R.E., where the Commission granted a permit to drill a well on a small tract, the protestant claimed that completing the well would cost more than the applicant's interest was worth and its production would confiscate some of the protestant's gas under its adjoining leases. This Court held that a refusal of the permit would result in denying the applicant's right to the recovery of the fair share of the gas in place under the tract, which right could not be refused because it was uneconomical to produce it. In accord: Foster v. Railroad Commission, Tex.Civ.App., 326 S.W.2d 533, error ref., N.R.E. and Atlantic Refining Co. v. Rail-

road Commission, Tex.Civ.App., 330 S.W. 2d 494, error ref., N.R.E.

It should be noted that the Supreme Court of Texas refused the writs in these cases almost contemporaneously with the issuance of its opinion in Halbouty v. Railroad Commission, Tex., 357 S.W.2d 364, 376. In Halbouty the appellants, as did Colorado here, argued before the Commission that the proration formula should limit recovery substantially to the reserves in place beneath each tract. The Court, however, held that their right to complain of the formula which they considered confiscatory of their property was not foreclosed and after citing Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 99 A.L.R. 1107, stated:

> "It is to be reemphasized that their permits were granted for the purpose of avoiding confiscation of the minerals underlying their properties and not for the purpose of enabling them to drain the minerals underlying adjoining lands to pay the cost of their operations plus profits. This does not mean and we are not to be understood as foreclosing the power of the Commission, by proper order or exception, to allow the holder of a Rule 37 permit to recover a sufficient amount of oil or gas to repay drilling and production costs and provide a reasonable profit when no other means of recovering the minerals which underlie his land are available."

In the Brown case the Court stated that it was the duty of the Commission to adjust the allowable based upon the potential production so as to give to the owner of the small tract only his just proportion of the oil and gas. But on motion for rehearing (126 Tex. 296, 87 S.W.2d 1069, 1070, 101 A.L.R. 1393) the Court held that while the Railroad Commission was authorized to make rules relating to the production of oil and gas, the Court would not undertake to prescribe the rules or standards to guide the Commission except that its actions must be reasonable, legal and not arbitrary, which

doctrine was reaffirmed in Atlantic Refining Co. v. Railroad Commission of Texas, 162 Tex. 274, 346 S.W.2d 801, 812.

If the action of the Commission in granting the permit to Sears without restriction and under the present allowable would result in the probable confiscation of gas belonging to Colorado or other adjoining owners, they are not precluded from obtaining relief by appropriate proceedings.

Colorado's third point of error is directed to the exclusion of Colorado's evidence that Sears made no attempt to unitize the 7.1 acre tract with adjoining gas units. During the trial Colorado offered evidence to show that Sears had never attempted to unitize his tract with adjoining gas units and that such unitization was available to him. Upon objection by Sears and the Commission, this evidence was excluded. By bill of exception Colorado sought to show that Sears had never attempted to unitize the tract; that Colorado would have granted such unitization with one of its units if Sears had requested it and that there is sufficient tolerance under the Commission's rule to permit unitization of the Sears tract with one of Colorado's adjoining 640 acre tracts.

Colorado contends that it was incumbent upon Sears to prove that he sought and was denied unitization or pooling basing its contention on the theory that where the applicant for a permit has more than one method of recovering the gas or its "equivalent in kind" under his tract, evidence as to whether he has attempted to utilize such methods has a bearing on whether or not he has been afforded a fair chance to recover his share of gas under his land or is facing confiscation if the permit is denied. Colorado's evidence tendered by bill of exception consists of the testimony of its vice-president, B. M. Morgan, who stated that there had been no request by Sears to Colorado for unitization or pooling of his tract but had such request been made he was sure that Colorado would have agreed since it was more or less a matter of company poli-

cy to enter into such agreements. On cross-examination Morgan stated that since Colorado's leases did not contain unitization clauses, it would be necessary to obtain the consent of the royalty owners in order to effect the unitization of the Sears tract into one of Colorado's tracts and that he believed that such consent from the royalty owners could have been obtained.

■■ It has been uniformly held by the Supreme Court of Texas that Art. 6008b, V.C.S., merely *authorizes* and does not compel unitization or pooling. Halbouty v. Railroad Commission, 357 S.W.2d 376. Here, the evidence tendered by the bill of exception does not warrant the conclusion that if Sears had offered to unitize or pool his tract with one of Colorado's tracts, Colorado would have been able to agree to such proposal since none of its leases contained any authorization to unitize or pool and whether the royalty owners under its leases would consent thereto was not definite. Halbouty v. Darsey, supra; Foster v. Railroad Commission, supra; and Atlantic Refining Co. v. Railroad Commission, supra.

For its fourth point of error Colorado asserts that the Trial Court erred in admitting over appellant's objections evidence concerning the amount of gas originally underlying the 7.1 acre tract, the number of wells drilled on less than 640 acres which are owned either by appellant or its suppliers, and whether or not appellant had ever applied for a permit under an exception to Rule 37, which evidence was admitted by the Trial Court both on direct and cross-examination of witnesses and by appellees' Exhibits 7 and 8.

■ In its brief Colorado states that none of this evidence had any bearing on the issues before the Court and therefore it was immaterial, incompetent and prejudicial. As to the amount of gas originally underlying his tract since Sears had the burden of proving confiscation, he was properly permitted to show that more than 56% of his gas had been already drained by wells on adjoining leases.

■ Evidence as to whether Colorado owned and produced gas from other small tracts in the field under permits granted under exceptions to Rule 37 has no bearing on the issue as to whether Sears sustained his burden of proving confiscation as a basis for the action of the Commission in granting him a permit to drill as an exception to Rule 37 and the Trial Court should have sustained the objection. However since such error was harmless, the fourth point of error is overruled.

The judgment of the Trial Court is affirmed.

Affirmed.